# Flynn's Estate.

*Executors and administrators—Trust and trustees—Investment in trustee's business—Interest.*

Where executors, who are also trustees, invest practically the whole personal estate in their own business and subject it to the risk of the same for many years, and it appears from their own testimony that they were obliged to pay a higher rate of interest than six per cent for the use of outside funds, they must account to the estate for at least the legal rate of interest, the parties in interest so demanding, although it appears that five per cent was recognized in the community in which they lived as a fair and reasonable rate for long investments.

Argued May 19, 1902.   Appeal, No. 153, April T., 1902, by Margaret Kuhns and Stella Flynn McKean, from decree of O. C. Venango Co., April T., 1901, No. 21, sustaining exceptions to auditor's report in estate of Joseph Flynn, deceased.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Exceptions to report of Thomas McGough, Esq., auditor.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in sustaining exceptions to auditor's report.

*Robert F. Glenn*, for appellant.—Having commingled the funds of the estate with their own, the executors are chargeable either with six per cent interest or with the profits of the business: Robinett's Appeal, 36 Pa. 174; Gilbert's Appeal, 78 Pa. 266; Clauser's Estate, 84 Pa. 51.

*James S. Carmichael*, for appellees.—The liability of a trustee for interest must depend, to a great extent, on the circumstances of each case: 1 Rhone's O. C. Pr. p. 398, §§ 41, 44; Heckert's App., 24 Pa. 482; Commonwealth v. Lintner, 8 Lanc. Bar, 25.

OPINION BY ORLADY, J., July 10, 1902:

Joseph Flynn died October 24, 1887, leaving to survive him a widow and a daughter Stella, then not seven years of age. By his will, dated July 14, 1887, he bequeathed his entire estate to his wife and daughter, " to be held and divided in manner and form as follows : the said property to be held in trust by my brothers Thomas Flynn, Robert J. Flynn and Michael J. Flynn," who were appointed as executors of his will in which the executors were requested to place the cash balance of the estate after payment of debts in good solvent securities, bearing a reasonable interest." It was further provided that "should my said daughter not live to the age of twenty-one years, then said executors to pay said wife one third the whole, they receiving the two thirds, and should neither wife nor daughter survive, then said executors to have the whole, after paying all expenses, share and share alike." To his will he subjoined a note as follows : " To my wife, daughter and executors : I trust and hope that each understands this my will, and that each will faithfully live up to and abide by it, and I do especially beg and request that my wife will be careful of the income she receives for herself and our dear daughter, saving all possible of that too, so that it may help to keep them both in comfort and independence. Take care of the pennies ; they make dollars. Let the securities be the very best and safely placed where my wife can receive the income, but out of all speculating or risk of loss. Rents to be paid my wife monthly and the interest on securities semi-annually." Shortly before making his will Joseph Flynn sold his mercantile busi-

ness to Thomas Flynn and M. J. Flynn, who traded as Flynn Brothers, and who employed the other executor, R. J. Flynn. For this merchandise Flynn Brothers gave to Joseph Flynn four notes, dated September 1, 1889, for $2,150 each, payable in three, six, nine and twelve months, at six per cent interest. On October 1, 1887, they gave him their note for $2,850, due one month after date, at five per cent interest. These notes were in the possession of Joseph Flynn at his death, and passed into the hands of the executors. The inventory and appraisement filed by the executors aggregated $11,762.42, the notes of Flynn Brothers representing all but $312.42. As these notes became due Flynn Brothers renewed them by making new notes to the order of the executors at five per cent, and the money represented by them was used by Flynn Brothers in their business of general merchandise and of manufacturing woolen goods, which course of business was followed by them until their final account was filed in March, 1901, a period of over thirteen years. In this account they charge themselves with five per cent on the amount of their notes to Joseph Flynn's estate and contend that this was " reasonable interest," and that the investment in their own business was " the very best and safely placed," according to the terms of the will.

Exceptions were filed by the widow and daughter and an auditor appointed to hear and determine them. Before the auditor it appeared that the executors had acted as testamentary guardians of Stella, and that neither the widow nor daughter had ever been represented by an attorney; that the sole security for the payment of these notes was the financial responsibility of Flynn Brothers; in the language of one of the executors, " There was no endorser, no bail, nothing but our ability to pay, no collateral security, no judgment, no bond, no mortgage ; " that the money of the Joseph Flynn estate used in the business of Flynn Brothers during the thirteen years, had netted Flynn Brothers four per cent; that at Joseph Flynn's death his real estate had been yielding about ten per cent of profit on the investment, and when the account was filed it yielded about sixteen to eighteen per cent; that during practically the whole time Flynn Brothers were borrowers from individuals and banks at rates of interest ranging from five to seven per cent; that at one time they were borrowers to the

extent of $17,000, used in a speculative venture in wool. It also appears that five per cent was recognized in that community as a fair and reasonable rate for long investments, and that Flynn Brothers were continuously in good local credit, being rated at from $50,000 to $75,000 in commercial agencies, and were regarded as careful, thrifty dealers; that the estate of Joseph Flynn suffered no loss through their administration. The only question is whether the executors should be charged with six per cent, the established legal rate, on the money of Joseph Flynn's estate used in their business, or five per cent, as claimed by them to be a reasonable interest.

This case is free from the hardship so often imposed on a faithful trustee who loses principal and interest despite careful and honest administration, as these executors not only preserved the whole fund but profited in their personal business by being the trustees of it. The widow and child do not claim the profits flowing from the use of their money, but ask only that the executors account at the interest rate fixed by the law. It was their duty to protect this fund, and they received it when a large portion of it carried six per cent interest. Under their own testimony it was a profitable trust to them by the investment in their own business when they were obliged to pay a higher rate of interest for the use of outside funds. They intermingled the trust funds with their own; and, however honest their intentions, they subjected this trust fund to the risk of business ventures, some of which were purely speculative. On the death of the daughter before her majority, and of the wife the whole fund would become their own property. "All refinements have been swept away and the rule is now universal that whether the executor was solvent or insolvent, whether the money was part of the general assets or specifically bequeathed, whether lent upon security or employed in the way of trade, the executor shall account for the utmost actual profits of the testator's estate:" Lewin on Trusts, 327. This principle has had the indorsement of many decisions of our Supreme Court and may be considered as conclusively settled. As stated in Baker's Appeal, 120 Pa. 33, we are not disposed to permit a principle so essential to the management of trust funds to be undermined or impaired in the

slightest degree: 7 P. & L. Digest of Decisions, 11574; Norris's Appeal, 71 Pa. 106; Clauser's Estate, 84 Pa. 51.

The decree of the court below is reversed and the amount of the surcharge, $1,381.30, as fixed by the auditor, is reinstated and his report is confirmed. As the whole controversy was due to the refusal of the executors to pay interest at the rate fixed by law, which, under the conditions of this case, was a reasonable one, the estate should not bear the costs of the adjudication, and the costs of the proceeding in the court below and in this court are ordered to be paid by the appellee.